1  Laura Handley
   Cal. Bar No. 171478
2  lhandley@mckoolsmith.com
   MCKOOL SMITH P.C.
3  300 W. 6th Street, Suite 1700
   Austin, TX 78701
4  Telephone: (512) 692-8748
   Facsimile: (512) 692-8744
5

6  ATTORNEYS FOR PLAINTIFF WI-LAN INC.

7

8

9

10

11

12                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF CALIFORNIA
13

14 WI-LAN INC.,

15           Plaintiff,                    Misc. No. '10 CV 0859   W   CAB

16 v.                                      PENDING IN THE UNITED STATES
                                           DISTRICT   COURT   FOR   THE
17 RESEARCH IN MOTION CORPORATION,         EASTERN DISTRICT OF TEXAS
   RESEARCH IN MOTION LTD., MOTOROLA,
18 INC., UTSTARCOM, INC., LG               Civil Action No. 2:08-CV-247
   ELECTRONICS MOBILE COMM U.S.A.,
19 AND LG ELECTRONICS, INC.,               **JURY TRIAL DEMANDED**

20           Defendants.                   **MEMORANDUM AND POINTS OF
                                           AUTHORITIES IN SUPPORT OF WI-
21                                         LAN INC.'S MOTION TO COMPEL
                                           THIRD PARTY QUALCOMM,
22                                         INCORPORATED TO PRODUCE
                                           DOCUMENTS, INFORMATION AND
23                                         OBJECTS**

24                                         Judge: _____
25                                         Courtroom: _____
                                           Hearing Date: _____
26                                         Time of Hearing: _____

27

28

                              **ORIGINAL**

Dallas 299612v1

# **TABLE OF CONTENTS**

Page(s)

BACKGROUND ............................................................................................. 3

I.     The Underlying Lawsuit and the Subpoena .................................... 3

II.    The Protective Order .......................................................................... 4

III.   Wi-LAN's Efforts To Compromise ................................................. 4

      A.     The Development Bar ............................................................ 5

      B.     The Prosecution Bar ............................................................. 6

             1.    *Broad Scope of Prohibited Activities* .................... 6

             2.    *The Broad Prohibited Field* .................................... 7

             3.    *The Lengthy Duration* ............................................ 7

             4.    *Qualcomm's Proposed Expansive Prosecution Bar* .......... 7

      C.     Source Code Printing Protocol ............................................ 8

ARGUMENT ................................................................................................. 9

I.     Qualcomm Should Be Ordered To Produce Its Source Code and Other Confidential Information ......................................................... 9

      A.     Qualcomm's Trade Secrets Are Well Protected ................. 9

      B.     Qualcomm Cannot Satisfy Its Burden Of Establishing Good Cause For The Restrictions It Seeks .......................... 10

      C.     Qualcomm's Prosecution And Development Bars Are Unreasonable As A Matter Of Law ..................................... 11

      D.     The Restrictions That Qualcomm Proposes Will Cause Undue Hardship To Wi-LAN ............................................... 11

CONCLUSION .............................................................................................. 12

Dallas 299612v1

1

2

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

3

CASES

4

*Avocent Redmond Corp v. U.S.*,
5
    85 Fed. Cl. 640 (Fed. Cl. 2009) ......................................................................................10, 11

6
*Chan v. Intuit, Inc.*,
    218 F.R.D. 659 (N.D. Cal. 2003)..............................................................................................11
7

*Document Generation Corp. v. Allscripts, LLC,*
8
    No. 6:08-CV-479, 2009 WL 1766096 (E.D. Tex. June 23, 2009) ........................................10

9
*Hochstein v. Microsoft Corp.*,
10
    No. 04-73071, 2008 WL 4387594 (E.D. Mich. Sept. 24, 2008).............................................11

11
*Island Intellectual Property LLC v. Promontory Interfinancial Network*
    658 F. Supp. 2d 615 (S.D.N.Y. 2009)................................................................................11, 12
12

*L.G. Philips LCD Co., Ltd v. Tatung Co.*,
13
    No. C-07-80073WHA, 2007 WL 869256................................................................................10

14
*Mirror Worlds, LLC v. Apple, Inc.*,
15
    No. 6:08-CV-88, 2009 WL 2461808 (E.D. Tex. Aug. 11, 2009)...........................................10

16

17

18

19

20

21

22

23

24

25

26

27

28

Dallas 299612v1

1        This is a miscellaneous action brought pursuant to Federal Rule of Civil Procedure

2   45(c)(2)(B)(i) to compel discovery in connection with a lawsuit for patent infringement pending

3   in the United States District Court for the Eastern District of Texas, *Wi-LAN, Inc., v. Research in*

4   *Motion*, No. 08-Civ-247. Plaintiff Wi-LAN, Inc. ("Wi-LAN") respectfully moves the Court for

5   an Order compelling Qualcomm Incorporated ("Qualcomm"), a third-party, to produce source

6   code and other technical and business information required by the subpoena, (the "Subpoena,"

7   Ex. A[1]), issued from this District to Qualcomm on October 20, 2009 pursuant to an existing

8   protective order issued by the United States District Court for the Eastern District of Texas on

9   September 1, 2009 ("Protective Order").

10  **PRELIMINARY STATEMENT**

11       Wi-LAN seeks from Qualcomm, a third party, information that is vital to its patent

12  infringement claims against the defendant mobile handset manufacturers.[2] Specifically, Wi-

13  LAN seeks access to source code and other technical and business information relating to the

14  infringing products that Defendants sell (the "Confidential Information"). No one disputes that

15  Wi-LAN is entitled to the Confidential Information, most if not all of which is solely within

16  Qualcomm's control.

17       Yet Qualcomm refuses to allow Wi-LAN access to the Confidential Information unless

18  Wi-LAN agrees to unreasonable conditions that would cripple its ability to pursue its claims.

19  Qualcomm proposes, for example, that any expert or consultant who is permitted access to

20  Qualcomm's source code must agree to refrain from any commercial product development for

21  any company—competitor or not—until 1 year "after the issuance of a final, non-appealable

22  decision resolving all issues in the case." At bottom, Qualcomm proposes that Wi-LAN's

23  experts and consultants agree to forfeit their careers for the foreseeable future as this case works

24  its way through trial and appellate courts. Wi-LAN's experts, as their affidavits make clear,

25  simply cannot agree to terms that so significantly threaten their ability to provide for themselves

26

27  [1]    All Exhibits referred to herein are attached to the Affidavit of Laura Handley.

28  [2]    The defendants are Motorola, Inc., UTStarcom, Inc., LG Electonics Mobilecomm U.S.A., Inc., LG Electronics, Inc. and Personal Communications Devices, LLC (collectively referred to herein as the "Defendants").

1    and their families.  Wi-LAN has spent over a year locating non-conflicted, competent experts

2    and getting these individuals up to speed.  Acceding to Qualcomm's unreasonable demands is

3    not an option; Wi-LAN will not be able to find a single competent expert that would agree to the

4    terms that Qualcomm insists upon.

5          Wi-LAN has made every effort to go above and beyond to accommodate Qualcomm's

6    purported confidentiality concerns, but Qualcomm remains insistent upon over-reaching

7    measures that serve no useful end.  The Protective Order that is already in place imposes more

8    than ample restrictions upon Wi-LAN attorneys and consultants to ensure that competitively

9    sensitive materials, including each company's "crown jewels," are safeguarded.  Tellingly, other

10   wireless chipmakers litigating against Wi-LAN (such as Intel Corp., Broadcom, Atheros and

11   Marvell)—sophisticated technology companies represented by experienced counsel—all found

12   the terms of the Protective Order perfectly acceptable.  Qualcomm's protestations are simply an

13   artifice to avoid its discovery obligations.

14         As the party seeking an overly restrictive protective order, Qualcomm bears the burden of

15   showing the Court that its proposed restrictions are necessary.  Qualcomm cannot satisfy that

16   burden with mere speculation.  Accordingly, Wi-LAN respectfully requests that the Court issue

17   an order requiring Qualcomm to produce all documents, information and things responsive to

18   Wi-LAN's Subpoena under the terms of the existing Protective Order.  In the alternative, Wi-

19   LAN requests that the Court direct Qualcomm to produce all documents, information and things

20   responsive to Wi-LAN's Subpoena under the terms of the Protective Order as modified by Wi-

21   LAN's proposed revisions.

22                                  **BACKGROUND**

23   **I.      THE UNDERLYING LAWSUIT AND THE SUBPOENA**

24         In June 2008, Wi-LAN commenced patent infringement litigation against leaders in the

25   mobile handset industry based upon their use of Wi-LAN's patented technology that enables

26   WiFi capability and wireless data transfer on CDMA-2000 cellular handsets.  (*See* Ex. B.)

27         In October 2009, Wi-LAN issued a third party subpoena to Qualcomm, which

28   manufactures micro-chips for wireless data transfer used in Defendants' infringing mobile

1   handsets. (Ex. A.)  The subpoena included a copy of the Protective Order in place in the Texas

2   action.  The Protective Order expressly protects third parties such as Qualcomm.  (*See* Ex. D.

3   ¶ 41.)

4          Wi-LAN's entitlement to discovery from Qualcomm, including discovery of the source

5   code used in Qualcomm micro-chips, is undisputed.  Qualcomm, however, refuses to produce or

6   permit inspection of, most notably, its source code.  Qualcomm claims that the protections

7   afforded by the Protective Order are inadequate. (*See* Ex. C at 138.)

8   **II.     THE PROTECTIVE ORDER**

9          The terms of the Protective Order were agreed upon after more than a year of negotiation

10  in a case brought by Wi-LAN against chip manufacturers such as Intel styled *Wi-LAN Inc. v.*

11  *Acer, et al.*, Civ. A. No. 2:07-CV-474(TJW) (E.D. Tex.). (*See* Ex. N.)  Many of the attorneys

12  representing the parties in the above-captioned case were involved in the negotiation of the *Acer*

13  protective order.  The *Acer* protective order was, more or less, adopted as the Protective Order in

14  this case. (*Compare* Ex. N *with* Ex. D.)  The Protective Order's provisions safeguard the trade

15  secrets of parties and non-parties alike. (*See* Ex. D ¶ 41.)

16         Other wireless chip manufacturers such as Intel, Broadcom, Marvell and Atheros have

17  permitted Wi-LAN access to their source code in the *Acer* litigation under the same safeguards

18  contained in the Protective Order.  (Handley Aff. ¶ 15.)  Moreover, these manufacturers have

19  agreed that confidential information produced in the *Acer* litigation may be utilized in this case.

20  (*See* Ex. O.)  While the Protective Order is acceptable to other wireless chip makers with highly

21  sensitive source code, Qualcomm claims it is insufficient to protect its source code.  (*See* Exs. C

22  at 138, E at 172-73, F at 175.)

23  **III.    WI-LAN'S EFFORTS TO COMPROMISE**

24         Over the past several months, Wi-LAN has engaged in an extensive dialogue with

25  Qualcomm, agreeing to incorporate additional safeguards into the already expansive Protective

26  Order. (*See* Exs. F, G, H, I, J, K.)

27         Notwithstanding Wi-LAN's good faith efforts, Qualcomm remains insistent upon over-

28  reaching requirements with respect to three provisions: (1) the "Development Bar" (2) the

4

1    "Prosecution Bar;" and (3) the source code printing protocol.  Qualcomm has refused to permit

2    Wi-LAN access to its Confidential Information code unless it agrees to these provisions.

3        **A.     The Development Bar**

4            There are a number of provisions already contained in the Protective Order that prevent

5    parties from utilizing the competitively sensitive confidential information of the producing party.

6    The most noteworthy of these is the "Use Restriction" set forth in Paragraph 26.  Pursuant to

7    Paragraph 26, all parties receiving confidential information of a Producing Party must

8    acknowledge that such information "shall only be used for the purposes of the litigation and shall

9    not be used in any other way."   (Ex. D ¶ 26).   In addition to the Use Restriction, the Protective

10   Order provides that no employee of any party to the litigation shall be permitted any access to

11   confidential information produced by third parties like Qualcomm. (*Id.* ¶¶ 7, 11, 16(c).)

12           Despite these safeguards, Qualcomm proposes that, before gaining access to Qualcomm

13   source code, Wi-LAN's experts must:

14

15           Agree in writing ***not to perform hardware or software
             development work or product development work directly or
16           indirectly*** intended for commercial purposes substantially related
             to the technology disclosed in Non-Party Qualcomm's Designated
17           Materials ***for a period of one year after the issuance of a final,
             non-appealable decision resolving all issues in the case.***

18

19   (Ex. L at 315 (emphasis added).)[3]  Such a provision is referred to as a "development bar"

20   because it prevents experts and consultants from doing any commercial product development

21   work in the specified field.

22           Qualcomm's proposed bar purports to preclude activity in a broad field that could

23   potentially be construed to include integrated circuits, semi-conductors, microchips and

24   microprocessors of any type.  Therefore, Qualcomm's overreaching proposal virtually precludes

25

26

[3]    Qualcomm proposed alternative language that is equally unsatisfactory.  Specifically,
27   Qualcomm proposes that Wi-LAN's agree to refrain from performing "non-litigation-
     related consulting work substantially related to the technology disclosed in . . .
28   Qualcomm's Designated Material, for a period of one year after the issuance of a final,
     non-appealable decision resolving all issues in the case." (Ex. L at 316.)

1    an electrical engineer from working in any facet of his field of training for an unascertainable

2    period of time.

3            Wi-LAN advised Qualcomm that the development bar is unreasonable and unacceptable

4    to its existing experts Richard D. Gitlin, Miguel Gomez, Alexander Haimovich, Thomas Payne

5    and Trevor Smedley. (*See* Exs. C, F at 174, I at 214-15.) Each of these experts have been

6    approved by wireless chip makers Intel Corp., Broadcom, Atheros and Marvell and have been

7    permitted to review their source code under terms identical to those contained in the Protective

8    Order. Messrs. Gitlin, Gomez, Haimovich, Payne and Smedley have submitted affidavits

9    explaining that Qualcomm's proposed conditions impose an unreasonable restraint upon their

10   right to earn a living and that they cannot possibly agree to them. (*See* Ex. P.)

11           Notwithstanding the Protective Order's existing provisions—which also provided that (i)

12   experts with access to Qualcomm's Confidential Information could not be affiliated with a

13   Qualcomm competitor, and (ii) any expert who subsequently determined to accept employment

14   with a competitor would advise Qualcomm in advance—Wi-LAN went the extra mile to further

15   allay Qualcomm's concerns. (Ex. D ¶¶ 12, 16(d), Atts. A, B.) Most notably, Wi-LAN agreed to

16   limit the number of experts with access to Qualcomm's Confidential Information. (Ex. I at 214-

17   15.) This protection was not provided to any of the Defendants or any of the parties in the *Acer*

18   litigation.

19           Yet Qualcomm insists upon the proposed development bar. While Qualcomm maintains

20   that the bar is necessary to protect its trade secrets (in contrast to the other wireless chip makers

21   in Wi-LAN's pending litigation), it has in the past agreed to a protective order that does not

22   contain such a development bar. (*See* Ex. M.)

23       **B.    The Prosecution Bar**

24           The Prosecution Bar set forth in the Protective Order is expansive, and can be broken out

25   into three main components: (1) a broad scope of prohibited activities; (2) a broad field of

26   subject matter in which activities are prohibited; and (3) a long duration. (*See* Ex. D ¶ 25.)

27           1.    *Broad Scope of Prohibited Activities*

28       The Protective provides that:

6

> Wi-LAN employees, officers, directors, in-house counsel, experts or consultants who personally receive any [Confidential Information] . . . *shall not participate in or be responsible for Wi-LAN for preparation or prosecution before a Patent Office of any patent, patent application, or for drafting or revising patent claims* (excluding such activities conducted in the context of post-grant adversarial proceedings including reexamination or opposition proceedings filed in relation to the patents-in suit or foreign counterparts).

(*Id.* (emphasis added).) This means that any Wi-LAN consultants who review Qualcomm's Confidential Information cannot be involved at all in *any substantive aspect* relating to the drafting of patent applications, or the "prosecution" of such applications with the United States Patent and Trademark Office (e.g., the amending of claims or the preparation of written responses to objections raised by the patent examiner).

>         2.      *The Broad Prohibited Field*

The "field" that the Prosecution Bar relates to is expansive and covers virtually everything within an electrical engineer's area of expertise. Specifically, the relevant field set forth in the Protective Order is "wireless or RF communications, DSL, integrated circuits, semiconductors, microchips, or microprocessors of any type, or products incorporating those items." (*Id.*)

>         3.      *The Lengthy Duration*

The duration of the Prosecution Bar is lengthy and spans

> *from the time of receipt . . . through and including one (1) year following* the first to occur of (i) the complete resolution of this case through entry of a final non-appealable judgment . . . (ii) the complete settlement of all claims against the Producing Party; or (iii) the individual person(s) cease to represent the Receiving Party or respective client in this case.

(*Id.*)

>         4.      *Qualcomm's Proposed Expansive Prosecution Bar*

Qualcomm seeks to vastly expand the pool of persons already subject to the Prosecution Bar. Qualcomm seeks a prosecution bar that must be adhered to by every person—including

outside litigation counsel[4] that are not involved in the prosecution of patents for Wi-LAN or a

Defendant. Specifically, Qualcomm proposes that "*any individual*" who personally receives its

source code

> Shall not participate or be responsible for preparation or prosecution before a Patent Office of any patent, patent application, or for drafting or revising patent claims that are substantially related to the technology disclosed [by Qualcomm] . . . from the time of receipt . . . through and including one year following the first to occur of" (i) the complete resolution of the case . . . (ii) the complete settlement of all claims in this action; or (iii) the individual persons cease to represent the Receiving Party or respective client in this case.

(Ex. L at 315.) Qualcomm's proposed bar thus prevents everyone, including non-inventing

entities such as law firms, from performing any role in the preparation and prosecution of

patents.

Wi-LAN agreed that the terms of the Protective Order should be amended to cover

Defendants' employees, officers, directors, in-house counsel, experts or consultants who were

granted access to Qualcomm's source code, as well as Wi-LAN's. (*See* Ex. C at 137.) Wi-LAN,

however, advised Qualcomm's counsel that the provision otherwise imposed an unacceptable

restraint upon an attorney's practice of law. (*Id.*)

### C. Source Code Printing Protocol

The Protective Order contains specific restrictions concerning the manner in which

source code may be handled. (Ex. D ¶¶ 21-23.) For example, the Protective Order provides that

source code will be made available for inspection only at secure locations, during specified

times, and that a log shall be kept tracking any specific requests for printed sections of code. (*Id.*

¶¶ 21, 23.) Notwithstanding these provisions, Qualcomm insists that Wi-LAN agree to, among

other things, a maximum number of pages (10) of continuous source code that it may print

during the course of its review of Qualcomm's source code.

---

[4]    (*See* Ex. D ¶ 11 (defining "Counsel of Record," which refers to, among others, Wi-LAN's litigation counsel, McKool Smith P.C).)

1    Even though Qualcomm historically has not asked for such a limitation, and even though

2  Wi-LAN's experts frequently had to print more than 10 pages of continuous source code during

3  their review of each other chipmaker's source code, Wi-LAN agreed to partially accommodate

4  Qualcomm's request. Specifically, Wi-LAN agreed that it would not print any continuous block

5  of more than 10 pages, but reserved the right to print in excess of 10 pages in situations where

6  necessary to "establish how the code is maintained in the ordinary course of business." (Ex. G at

7  194 (¶ 25(d)).) Qualcomm rejected this effort to compromise as well.

8                                    **ARGUMENT**

9  **I.    QUALCOMM SHOULD BE ORDERED TO PRODUCE ITS SOURCE CODE
       AND OTHER CONFIDENTIAL INFORMATION**

10

11   Given the ample safeguards already imposed under the Protective Order and the

12  additional safeguards Wi-LAN has agreed to, there simply is no basis for Qualcomm's continued

13  refusal to produce its Confidential Information. Any purported concerns that Qualcomm has

14  regarding the safety of its "crown jewels" under the terms of the Protective Order—which has

15  been deemed sufficient by every one of the similarly situated chipmakers—are simply a red

16  herring. Wi-LAN has gone the extra mile, but the protections Qualcomm seeks are

17  overreaching, unreasonable as a matter of law and will result in significant hardship to Wi-LAN.

18   **A.    Qualcomm's Trade Secrets Are Well Protected**

19   The Protective Order, both as currently drafted and including Wi-LAN's proposed

20  additional modifications, ensures that Qualcomm's trade secrets will remain protected. The

21  Protective Order contains scores of restrictive provisions in addition to the certification forms

22  (Ex. D, Atts. A, B), Prosecution Bar (*Id.* ¶ 25), and source code protocol (*id.* ¶¶ 21-23),

23  referenced above, including:

24    • The Use Restriction providing that all parties receiving confidential information,
25       including source code, of a Producing Party must acknowledge that such
26       information "shall only be used for the purposes of the litigation and shall not be
         used in any other way." (*Id.* ¶ 26);

27    • No Wi-LAN employee, nor any Defendant employee will have access to
28       Qualcomm Confidential Information. (*Id.* ¶¶ 7, 11, 16(c))

- Any outside consultants or experts that review Wi-LAN's source code must be pre-approved by the producing party. (*Id.* ¶¶ 19-20)

These protections were good enough for Qualcomm's peers and each of the Defendants. Chip manufacturers Intel, Broadcom, Marvell and Atheros *all* produced source code under such Protective Order terms and have agreed that their materials can be used in the instant case under the Protective Order's terms. (Handley Aff. ¶ 15.)

**B.     Qualcomm Cannot Satisfy Its Burden Of Establishing Good Cause For The Restrictions It Seeks**

As the party seeking to limit discovery, Qualcomm must demonstrate "clearly defined and serious injury" that would result in the absence of the provisions that it proposes. *L.G. Philips LCD Co., Ltd v. Tatung Co.*, No. C-07-80073WHA, 2007 WL 869256, at * 2 (N.D. Cal. Mar. 20, 2007). Otherwise stated, Qualcomm must establish "good cause" why it is entitled to additional protections. *See id.* at *3; *Mirror Worlds, LLC v. Apple, Inc.*, No. 6:08-CV-88, 2009 WL 2461808, at *1 (E.D. Tex. Aug. 11, 2009); *Document Generation Corp. v. Allscripts, LLC*, No. 6:08-CV-479, 2009 WL 1766096, at *2 (E.D. Tex. June 23, 2009) ("When parties . . . agree on entry of a protective order but differ on the order's terms, the party seeking to limit discovery bears the burden of demonstrating . . . 'good cause.'"). When a party seeks protective measures that would bar patent professionals from performing their day-to-day work, such party must establish an "unacceptable opportunity for inadvertent disclosure." *Avocent Redmond Corp v. U.S.*, 85 Fed. Cl. 640, 645-46 (Fed. Cl. 2009).

Qualcomm cannot possibly satisfy its burden here. To be clear, the only party representatives that will have access to its Confidential Information are: (1) litigation counsel, who do not participate in any competitive decision-making on behalf of Wi-LAN; and (2) outside consultants that Qualcomm has pre-approved.[5] Moreover, access will be restricted pursuant to the detailed source code protocol that, among other things, requires logging of every piece of source code that is printed. Qualcomm's cry that the Protective Order does not

---

[5]    As is customary, the Protective Order also provides that the presiding Court in the Eastern District of Texas and court personnel are authorized to review confidential information. Likewise, designated arbitrators and mediators and professional vendors may have access to the materials provided they agree to certify in writing compliance with the terms of the Protective Order.

1   sufficiently protect its Confidential Information thus rings hollow when chipmakers Intel,

2   Broadcom, Marvell and Atheros—each of whom would have similar interests in preserving their

3   confidential information—found the terms perfectly acceptable.   Furthermore, each of these

4   chipmakers already has cleared Wi-LAN's proposed experts.   In sum, Qualcomm has not

5   suggested to Wi-LAN any facts suggesting an unacceptable opportunity for inadvertent

6   disclosure or any clearly defined and serious injury.

7          **C.      Qualcomm's Prosecution And Development Bars Are Unreasonable As A**
                 **Matter Of Law**
8
            Courts routinely reject sweeping prosecution bars, such as those proposed by Qualcomm,
9
     as an unreasonable restraint upon the practice of law.   *See, e.g, Avocent*, 85 Fed. Cl. at 645-46;
10
     *Hochstein v. Microsoft Corp.*, No. 04-73071, 2008 WL 4387594, at *3-4 (E.D. Mich. Sept. 24,
11
     2008).   As recently explained in *Island Intellectual Property LLC v. Promontory Interfinancial*
12
     *Network*, "Patent prosecution bars . . . are not required when one party simply asserts that
13
     opposing counsel prosecutes patents involving the same technology at issue in a lawsuit."  658 F.
14
     Supp. 2d 615, 617 (S.D.N.Y. 2009); *see also Chan v. Intuit, Inc.*, 218 F.R.D. 659, 662 (N.D. Cal.
15
     2003) (declining to extend prosecution bar to in-house supervisory patent personnel).
16
            The same reasoning applies with equal force to Qualcomm's proposed Development Bar.
17
     The provision prohibits an unreasonably broad scope of commercial activity for an unidentified
18
     period of time—all in the name of protecting secrets that already are well-protected.   Under the
19
     terms of Qualcomm's proposed development bar, a Wi-LAN expert could resign from the case
20
     today, but would be unable to do any development work in her field of expertise until one year
21
     after this litigation ended, which might be 10 years from now.   The affidavits of Messrs. Gitlin,
22
     Gomez, Haimovich, Payne and Smedley establish just how unreasonable Qualcomm's
23
     development bar is.  (*See* Ex. P.)
24
            **D.      The Restrictions That Qualcomm Proposes Will Cause Undue Hardship To**
25               **Wi-LAN**

26          Any *de minimis* benefit that might arguably result from Qualcomm's restrictive measures,

27   is overwhelmed by the hardship that Wi-LAN, its consultants and litigation counsel would

28

1    sustain.  *See Avocent Redmond Corp v. U.S.*, 85 Fed. Cl. at 645 (citing *U.S. Steel Corp. v. United*
2    *States*, 730 F.2d 1465 (Fed. Cir. 1984)).

3          Wi-LAN spent over a year negotiating the Protective Order with chipmaker Intel—which
4    negotiated on behalf of defendants that were similarly situated to chipmaker Qualcomm.  Wi-
5    LAN spent a similar period of time locating experts that were acceptable to those chipmaker
6    Defendants.  Wi-LAN's counsel and experts already have spent countless hours developing case
7    strategy, and some of Wi-LAN's experts have been reviewing source code since May 2009.  Wi-
8    LAN will lose the value of its investment in these experts if Qualcomm obtains its prohibitive
9    Development Bar.  With trial less than a year away, Wi-LAN will be back at square one, faced
10   with the impossibility of finding competent, non-conflicted experts that are willing to risk their
11   livelihood over the next several years.

12         Qualcomm's proposed Prosecution Bar likewise imposes serious hardship upon Wi-
13   LAN's litigation counsel.  Its expansive scope prevents Wi-LAN's litigation counsel from
14   performing *any prosecution work* across a broad field for *any client* for an indefinite period of
15   time.[6]  Courts have recognized the highly prejudicial impact of such a restraint on litigation
16   counsel and rejected requests for prosecution bars virtually identical to the bar Qualcomm seeks
17   here.  *See, e.g., Island Intellectual Property*, 658 F. Supp. 2d at 620.

18                                    **CONCLUSION**

19         Qualcomm's Confidential Information, including its source code, is well protected under
20   the terms of the Protective Order.   Wi-LAN respectfully requests that the Court Order
21   Qualcomm to produce its source code to Wi-LAN pursuant to the terms of the Protective Order
22
23   or, in the alternative, under the terms of the Protective Order as modified by Wi-LAN's proposed
24   revisions.

25

26

27

28   _____
     [6]   Wi-LAN's outside litigation counsel do not currently prosecute patents in the field, but
           are licensed by the Patent and Trademark Office to do so.

                                         12

1   Dated: April 21, 2010.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Laura Handley
McKool Smith P.C.
300 W. 6th Street, Suite 1700
Austin, TX 78701
Telephone: (512) 692-8749
Fax: (512) 692-8744
*lhandley@mckoolsmith.com*

**ATTORNEYS FOR PLAINTIFF
WI-LAN, INC.**